[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13807
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00097-EAK-TBM-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS ALFREDO PARRALES BRAVO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 12, 2018)

Before TJOFLAT, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Luis Alfredo Parrales Bravo ("Parrales Bravo")

appeals his 135-month total sentence for conspiring to possess and possessing with

intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503(a), 70506(a)-(b), and 21 U.S.C. § 960(b)(1)(B)(ii).  On appeal, Bravo argues that his total 135-month sentence, at the low end of the advisory guidelines range of 135 to 168 months' imprisonment, was substantively unreasonable because the district court failed to vary downward in order to avoid imposing disparate sentences between himself and his codefendant, Edwin Darwin Quintero Bravo ("Quintero Bravo"), who was sentenced to 120 months' imprisonment.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Offense Conduct

On February 23, 2017, the U.S. Coast Guard intercepted a vessel in international waters off the coast of the Galapagos Islands.  After boarding the boat, Coast Guard officers recovered 46 bales of cocaine, totaling 1,100 kilograms in weight.  The Coast Guard officers interviewed and detained the crewmembers, which included defendant Parrales Bravo, and (1) Quintero Bravo; (2) Walberto Cuero Cortes; and (3) Francisco Rodriguez Barajas ("Barajas").

### B.    Indictment and Pleas

All of the crewmembers were charged together under the MDLEA with one count of conspiring to possess with intent to distribute five kilograms or more of

2

cocaine while on board a vessel subject to the jurisdiction of the United States and one count of possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. The four codefendants were indicted on March 7, 2017.

In May 2017, all four codefendants entered guilty pleas. Three of the codefendants—Quintero Bravo, Barrajas, Cortes—pled guilty, pursuant to written plea agreements, to the cocaine conspiracy count and, in exchange, the government agreed to dismiss the cocaine possession count. In their plea agreements, the three codefendants also agreed to cooperate with the government, and the government agreed to consider each codefendant's cooperation and, if warranted, to file a motion recommending a sentence reduction based on the codefendant's substantial assistance. Defendant Parrales Bravo, however, pled guilty to both counts of the indictment and did so without the benefit of a written plea agreement.

At their plea hearing, all four codefendants admitted that they had entered into a plan to smuggle more than five kilograms of cocaine by sea and that the U.S. Coast Guard had intercepted them in international waters on a vessel with multiples bales of cocaine, totaling in excess of five kilograms. The four codefendants also all agreed that no crew member identified himself as the master of the vessel, but that one crew member had said that the vessel had departed from Ecuador.

3

**C.    Sentencing of Defendant Parrales Bravo**

At defendant Parrales Bravo's sentencing, the district court, without objection, (1) calculated defendant Parrales Bravo's base offense level of 38, pursuant to US.S.G. § 2D1.1(c)(1), because his offense involved 1,100 kilograms of cocaine; (2) decreased the offense level by 2 levels, pursuant to § 2D1.1(b)(17), because he met the safety-valve criteria in § 5C1.2; and (3) decreased the offense level by another 3 levels, pursuant to § 3E1.1(a) and (b), for acceptance of responsibility, which resulted in a total offense level of 33.  With total offense level of 33 and a criminal history category of I, the district court determined that the advisory guidelines range was 135 to 168 months' imprisonment.

Defendant Parrales Bravo asked the district court to vary downward to a 120-month sentence, arguing that he was "virtually identical to other crew members" in the case based on his background, upbringing, and education and that his role as a "standard crewman" was "less than Mr. Quintero Bravo who was sentenced [that] morning to 120 months."  Defendant Parrales Bravo asked for his total sentence to equal Quintero Bravo's 120-month sentence "in order to avoid an unwarranted sentence disparity, between people who are similarly charged, [and] committed similar offenses."

The district court denied defendant Parrales Bravo's request for a downward variance, stressing that codefendants Barrajas and Quintero Bravo received lower

4

sentences because of their cooperation with the government and it was appropriate

for Parrales Bravo, like his "fellow crewmember" codefendant Cortes, to receive a

135-month sentence.  The district court thus imposed concurrent 135-month

sentences on each count.

## II.  GENERAL PRINCIPLES

We review the reasonableness of a sentence under the deferential

abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct.

586, 591 (2007).  We first ensure that the district court made no significant

procedural error, then examine whether the sentence was substantively reasonable

in light of the totality of the circumstances.  Id. at 51, 128 S. Ct. at 597; see also

United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).[1]  The party

challenging the sentence bears the burden to show that the sentence was

unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors.  United

States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).[2]  We will reverse only if

"left with the definite and firm conviction that the district court committed a clear

---

[1]Parrales Bravo does not argue that his sentence is procedurally unreasonable.

[2]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

In imposing a particular sentence, one of the factors the district court considers is the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6). The purpose of this factor is to avoid such disparities "among defendants with similar records who have been found guilty of similar criminal conduct." United States v. Docampo, 573 F.3d 1091, 1102 (11th Cir. 2009) (quotation marks omitted). Therefore, "[a] well-founded claim of disparity . . . assumes that apples are being compared to apples." Id. at 1101 (quotations omitted); see also United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009) (explaining that sentencing disparities are not "unwarranted" if the comparators are not similarly situated). In United States v. Williams, 526 F.3d 1312, 1324 (11th Cir. 2008), we concluded that codefendants who received disparate sentences were not similarly situated where one of the defendants received a shorter sentence because he had cooperated with government.

### III. PARRALES BRAVO'S SENTENCE

The district court did not abuse its discretion in imposing a 135-month total sentence. Parrales Bravo's sentence was well below the statutory maximum life

6

sentence under 21 U.S.C. § 960(b)(1)(B)(ii) and at the low end of the advisory guidelines range of 135 to 168 months' imprisonment, both of which are indications the sentence is reasonable.  See United States v. Croteau, 819 F.3d 1293, 1309-10 (11th Cir.), cert. denied, 137 S. Ct. 254 (2016).

Contrary to Parrales Bravo's contention, the 15-month disparity between his 135-month sentence and Quintero Bravo's 120-month sentence did not render Parrales Bravo's sentence substantively unreasonable.  Specifically, the two defendants were not similarly situated where codefendant Quintero Bravo entered into a plea agreement in which he agreed to cooperate with the government and in fact provided information to the government.

Defendant Parrales Bravo, on the other hand, pled guilty without a plea agreement and did not agree to cooperate with the government in exchange for a possible sentence reduction.  Defendant Parrales Bravo did admit to his own conduct in the drug smuggling venture as part of his guilty plea and received a 3-level reduction for acceptance of responsibility as a result.  But, there is no evidence in the record that defendant Parrales Bravo provided any additional information to the government that they did not already have.  In fact, the district court pointed out that defendant Parrales Bravo was more similar to codefendant Cortes, who, like Parrales Bravo, did not provide the government with information beyond his own guilty plea, and received a 135-month sentence.

Given that codefendant Quintero Bravo received a downward variance for his cooperation, the 15-month disparity between defendant Parrales Bravo's sentence and Quintero Bravo's sentence was not "unwarranted."  See Docampo, 573 F.3d at 1102; Williams, 526 F.3d at 1324.  Accordingly, Parrales Bravo has not met his burden to show that his 135-month sentence was unreasonable.

**AFFIRMED.**